IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HECTOR L. APONTE MELENDEZ

Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY
(MICHAEL J. ASTRUE)

Defendants

**Civil No. 08-1141 (SEC)**

**OPINION AND ORDER**

This is an action brought under § 205(g) of 42 U.S.C. § 405(g), the "Social Security Act." Plaintiff Hector L. Aponte Melendez ("Plaintiff" or "Aponte") seeks review of the Commissioner of Social Security's ("the Commissioner") denial of his application for disability and disability insurance benefits (Docket # 1). The Commissioner of the Social Security Administration ("SSA") filed a Memorandum of Law in support of the decision to deny benefits (Docket # 12), and Plaintiff filed his own Memorandum of Law (Docket # 9). After reviewing the parties' filings, and the applicable law, the case is **REMANDED** for an additional explanation or clarification of the Administrative Law Judge's ("ALJ") decision.

**Factual and Procedural Background**

On February 17, 2006, the ALJ rendered a final decision denying Plaintiff's application for disability and Social Security disability insurance benefits. T.R. at 29-33. On February 24, 2006, Plaintiff filed a request for review before the SSA's Appeals Council, and submitted additional evidence before the same, including a questionnaire completed by a General Practitioner with a signature but no legible name, progress notes from the Ponce School of Medicine, for the period from May 2005 through October 2007, a medical certificate dated October 23, 2007 from Dr. Luis A. Escabí ("Dr. Escabí"), among other documents. The Appeals

**Civil No. 08-1141 (SEC)**  2

Council denied Plaintiff's request for review. T.R. at 6. On February 1, 2008, Plaintiff filed a petition seeking judicial review of the Commissioner's final decision. Docket # 1.

**Standard of Review**

The scope of our judicial review of a Commissioner's final decision is limited both by statute and case law. See 42 U.S.C. §405(g). Section 405(g) provides that the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." In Richardson v. Perales, 402 U.S. 389 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938)), the United States Supreme Court defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401; see also Tsarelka v. Secretary of H.H.S., 842 F. 2d 529, 534 (1st Cir. 1987); Chaparro v. Massanari, 190 F. Supp. 2d 260, 262 (D.P.R. 2002). Moreover, the First Circuit has held that this determination of substantiality must be made on the record as a whole. See Ortiz v. Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991). Courts have found that written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial evidence, although these may serve as supplementary evidence for the ALJ to consider in conjunction with the examining physician's reports. Irrizary v. Commissioner of Social Security, 253 F. Supp. 2d 216, 218 (D.P.R. 2003). Lastly, "it is the Secretary's responsibility to choose between conflicting evidence." Burgos López v. Secretary of H.H.S., 747 F.2d, 37, 41 (1st Cir. 1984); see also Tremblay v. Secretary of H.H.S., 676 F. 2d 11, 12 (1st Cir. 1982); Freeman v. Barnhart, 274 F.3d at 609 (citing Seavey v. Barnhart, 276 F.3d 1, 15 (1st Cir. 2001).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, n.5 (1987). It is well settled law that a claimant is disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(a). In making this determination, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520; see, e.g., Goodermote v. S.H.H.S., 690 F.2d 5, 6-7 (1st Cir. 1982). However, "all five steps are not applied to every applicant, as the determination may be concluded at any step along the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). The First Circuit has held that "[t]he applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Id.

　　　　The five-step inquiry made by the ALJ in determining whether a claimant is disabled is as follows. First, the ALJ asks: is the claimant currently employed? If so, she is not disabled. If she is not, then the ALJ must turn to the second question: does the claimant have a severe impairment (one which significantly limits his ability to perform work-related functions)? If not, then she is not disabled. If so, the ALJ must ask: does the claimant have an impairment equivalent to those contained in the regulations' Appendix 1 to Subpart P of Part 404 ("Appendix 1")? If so, then she is automatically rendered disabled. If not, then the ALJ must determine if the claimant's impairment prevents her from performing work that he has done in the past. If the ALJ determines that the claimant cannot perform her past work, then he must determine if claimant's impairment will prevent him from performing other work of the sort found in the national economy. If the

**Civil No. 08-1141 (SEC)**     4

claimant cannot perform any such work, she is disabled. If she is capable of performing work available in the economy, then she is not disabled under the Social Security standards. See Goodermore, 690 F. 2d at 6-7; Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

As stated above, the burden is on the claimant to establish that he is disabled, and unable to return to his past work. Id. at 7. However, if the claimant meets this burden, then it is the Secretary's burden to show that there are other jobs in the national economy that the claimant can perform, notwithstanding his disability. Id.; see also Seavey v. Barnhart, 276 F.3d at 5 (1st Cir. 2001); Torres v. Secretary of H. H. S., 677 F. 2d 167, 168 (1st Cir. 1982); González-Alemán v. Secretary of H.H.S., 86 F. 3d 1146, 1996 U.S. App. LEXIS 11655 (1st Cir. 1996). If the applicant's limitations are exclusively exertional, then the Commissioner can meet this burden through the use of a chart contained in the Social Security regulations, referred to as Grids, which are basically a matrix "combining different permutations of the four essential factors set out in the statute (age, education, work, experience, and residual work capacity) and stating, as to each combination, whether a claimant with those characteristics is disabled or not disabled." Seavey, 276 F.3d at 5; Vázquez v. Secretary of H.H.S., 683 F. 2d 1, 2 (1st Cir. 1982).

However, if the claimant has non-exertional impairments, the Grid may not accurately reflect the availability of suitable jobs. González-Alemán, 1996 U.S. App. LEXIS 11655 at * 2. That is, considering that the Grid is based on a claimant's exertional capacities, "it can only be applied when a claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level." Rivera-Rivera v. Barnhart, 330 F. Supp. 2d 35, 37 (D.P.R. 2004)(citing Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994)). Therefore, in cases "where a nonexertional impairment significantly affects claimant's ability to perform the full range of jobs he is otherwise exertionally capable of performing, the Secretary must carry his burden of proving the availability of jobs in the national economy by other means, typically through the use of a vocational expert." Miranda-Monserrate v. Barnhart, 520 F. Supp. 2d 318, 325 (D.P.R.

**Civil No. 08-1141 (SEC)**                                                              5

2007)(internal citations omitted). However, "should a non-exertional restriction be found to impose no significant limitation on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate." <u>Rivera-Rivera</u>, 330 F. Supp. 2d at 37-38.

In considering whether a claimant's residual work capacity is reduced by non-exertional limitations (i.e. a mental impairment), the Secretary must assess the claimant's mental capability for unskilled work, and his ability to cope with the demands of any work environment. <u>See Miranda-Monserrate, 520 F.Supp. 2d at 326; Irlanda v. Secretary of H.H.S.</u>, 955 F. 2d 765, 769-770 (1st Cir. 1991). The first inquiry focuses on whether a claimant is able to understand, remember, and carry out simple instructions, respond appropriately to the normal work environment, and to deal with the changes in a routine work situation. <u>Id</u>. The second inquiry requires determining whether a claimant can be punctual, attend work on a regular basis, accept supervision, and remain in the work place for an entire day. <u>Id</u>. at 326.

Finally, an ALJ is a lay fact finder that lacks the expertise to make a medical conclusion, and, as such, "he cannot interpret raw, technical medical data." <u>Irrizary</u>, 253 F. Supp. 2d at 219 (citing <u>Rivera-Torres v. Secretary of H. H. S.</u>, 837 F. 2d 4, 7 (1st Cir. 1988); <u>Berríos v. Secretary of H. H. S.</u>, 796 F. 2d 574, 576 (1st Cir. 1986)).

**Factual and Procedural Background**

Pursuant to the record before this Court, Plaintiff was thirty years old on August 20, 2001, the alleged onset date, and age thirty-five when his insurance coverage lapsed on December 31, 2006. Plaintiff has a twelfth-grade education and had previously worked as a messenger, a security guard, and a road maintenance worker. T.R. at 80, 132-137.

*Physical Impairment*

On August 20, 2001, Plaintiff sought treatment at Puerto Rico Medical Center for a injury he suffered to his right upper arm after falling out of a car's passenger side. T.R. at 179. Therein he was diagnosed with a fracture to his right radius, for which he underwent a closed reduction,

**Civil No. 08-1141 (SEC)**                                                                 6

with external fixation of the right radial fracture. T.R. at 177, 175, 180, 186. On August 24, 2001, Plaintiff was discharged from Puerto Rico Medical Center. T.R. at 174. On October 14, 2001, Plaintiff's external fixer was removed. T.R. at 171-172. A follow up visit held on December 19, 2001, showed Plaintiff's range of motion of his right wrist was overall good, and his pain level was low. T.R. at 170. Notwithstanding, on April 24, 2002, Plaintiff returned complaining of pain, and limited range of motion, and as a result, he was referred to physical therapy. T.R. at 168.

On August 30, 2002, Plaintiff was evaluated by Dr. Cesar Cintrón Valle, orthopedic surgeon. T. R. at 191-205. Dr. Cintrón found some level of atrophy in the right arm, and some level of swelling of the wrist. T.R. at 196. However, Dr. Cintrón stated that Plaintiff was not cooperative, insofar as he did not make "the maximum effort to move the articulations, neither did he make a considerable effort when the instruments to test grip and fist strength were offered." Id. Dr. Cintrón also noted no deformity of the forearm or fingers pain, tenderness, swelling, or nodes in the joints; nor did he notice any sensory changes or atrophies. T.R. at 203. He further concluded that Plaintiff was able to grip, grasp, pinch, tap, oppose fingers, button his shirt, pick up a coin, and write. Id. Additionally, Dr. Cintrón noted that there was "no post-traumatic Arthritis of the Carpal bones," and that the fracture of the Right Distal Radius was totally consolidated. T.R. at 199. Finally, Dr. Cintrón stated that, in his opinion, Plaintiff was able to sit, stand, walk, lift, carry loads, handle objects, hear, speak, and travel; and that he did not need any further treatment besides physical therapy. T.R. at 200

After Plaintiff's administrative hearing, the ALJ referred Plaintiff to another orthopedic evaluation with Dr. Cintrón. T.R. at 344. The evaluation took place on June 10, 2005, whereupon Dr. Cintrón once again noted no atrophy of the wrist, and that Plaintiff was able to pinch, oppose, and grip. T.R. 288-289. However, Dr. Cintrón noticed a mild edema of the same wrist. Id. In the same evaluation, X-rays showed a completely healed fracture of the distal Radius with no

**Civil No. 08-1141 (SEC)** 7

deformity, infection, or post traumatic Arthritis of the wrist. Id. As such, Dr. Cintrón's final diagnosis was that Plaintiff had a "[c]ompletely healed fracture of the right distal radius." Id.

*Mental Impairment*

On December 10, 2002, a Disability Determination Services clinical psychologist, Dr. Jeanette Maldonado, Psy.D., rendered Plaintiff's mental residual function capacity assessment. T.R. at 233-235. Therein, Dr. Maldonado noted that Plaintiff was able to understand, remember, perform simple tasks, meet weekly demands, and concentrate for more than a two-hour period. T. R. at 235. Additionally, Dr. Maldonado found that Plaintiff can tolerate a normal work environment, including supervision, decision making, and interactions with peers. Id.

On August 15, 2003, Plaintiff was referred to the Division of Behavioral Health at the Ponce School of Medicine, exhibiting symptoms of hostility, trouble sleeping, visual and auditory hallucinations, and trouble with memory. T.R. at 265, 274. The evaluator, Jacqueline Santiago Ramos, stated that the expected form of treatment is "[t]o stabilize symptoms and sleep pattern." T.R. at 274. On August 22, 2003, Plaintiff went to the Division of Behavioral Health complaining of waking frequently during the night, and his wife reported that Plaintiff exhibited nervousness and anxiety. T.R. at 275. At this evaluation, Plaintiff was found to be alert and oriented, but complained of feeling anxious and irritable, and his attention and concentration were decreased. Id. At this time, Plaintiff was diagnosed with Major Mood Disorder, and as being depressed. T.R. at 277. He was assigned a Global Assessment of Functioning (GAF) score of 60-65, which denotes mild to moderate symptoms. Id.

On December 23, 2003, Plaintiff once again reported difficulty sleeping, although he was alert and oriented, he denied having visual and audible hallucinations, and was overall cooperative. T.R. at 261. However, on July 2, 2004, despite being alert and oriented, Plaintiff complained of visual and audio hallucinations, as well as anxiety. T.R. at 258. On February 8, 2005, Plaintiff complained of insomnia and anxiety, despite appearing alert and oriented. T.R. at 255. On March

**Civil No. 08-1141 (SEC)**                                                                 8

3, 2005, the Behavioral Health Clinic at the Ponce School of Medicine reiterated its Major Mood Disorder, and depression diagnosis. T.R. at 251.

On November 3, 2004, Plaintiff was evaluated by psychiatrist Dr. Edelmiro Rodriguez. T.R. 246-250. Plaintiff's wife answered most of Dr. Rodiguez's questions, since Plaintiff did not speak, or reply to questions. T.R. at 246. Plaintiff's wife claimed that Plaintiff suffered "from irritability, poor motivation toward speaking most of the time, loss of hair, poor appetite, insomnia, poor noise tolerance, isolation, crying and right arm pain." Id. During the evaluation, Dr. Rodriguez noted that Plaintiff appeared sad, his attention was poor, and he did not seem attentive to what was being asked and explained. T.R. at 246. As a result of said evaluation, Dr. Rodriguez ruled out Major Depressive disorder, recurrent type. T.R. at 247.

After Plaintiff's administrative hearing held on March 4, 2005, the ALJ also referred Plaintiff to another psychiatric evaluation. T.R. at 344. On June 16, 2005, psychiatrist Dr. Rainaldo Kianes, examined Plaintiff. T.R. at 285-287. During said evaluation, Plaintiff stated that he could not remember things, and could not answer any further questions. T.R. at 285. As such, Dr. Kianes interviewed Plaintiff's wife in his presence. Id. Plaintiff's wife stated that "since [the 2001 car accident he] has never been what he used to be." Id. She again stated that he still suffered from visual and audible hallucinations, had sleep disturbances, had to be told to bathe, and didn't do anything. Id. Dr. Kianes also noted that Plaintiff was non-cooperative, and did not make eye contact with him during the evaluation and interview. T.R. at 286. As such, he was not able to evaluate Plaintiff's speech, mood, affect, or thoughts. Id.

**Applicable Law and Analysis**

Claimant alleges that the ALJ erred (1) in basing his conclusion on his own medical opinion, despite not being a qualified medical expert, and (2) in concluding that Claimant's illnesses were not severe enough to meet the requirements of Listing 12.04. Docket # 9.  In support thereof, Claimant avers that insofar as he meets the requirements of Listing 12.04

**Civil No. 08-1141 (SEC)**                                                                 9

(affective disorders), he is disabled for purposes of social security disability benefits. In opposition, Defendant argues that pursuant to the medical reports cited by Plaintiff, he does not meet the requirements of Listing 12.04. Specifically, Defendant alleges that Plaintiff has not met his burden of proving that his impairment met, or equaled, those in Listing 12.04, and that he could not perform his past work as a security guard.

This Court must determine whether the Commissioner's decision that Plaintiff failed to establish that he was disabled from August 20, 2001 through December 31, 2006, is supported by substantial evidence. Per the ALJ's decision, Plaintiff met the insured status requirements through December 31, 2006, and had not engaged in substantial gainful activity since 2001. Plaintiff does not contest the aforementioned conclusions. Instead, Plaintiff argues that despite concluding that he suffers from major depressive disorder and trauma to the right arm, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled one of the listed impairments at Appendix 1.  Plaintiff argues that upon finding that he had a severe impairment within Listing 12.04, the ALJ's inquiry ended, and he was entitled to disability benefits.[1]

---

[1] Plaintiffs point to the June 21, 2002 note by APS Healthcare whereupon the examining physician identified depression, anxiety, and anger, auditory hallucinations, irritable mood, and that Plaintiff wished to be dead. T.R. at 155-163. Therein, the physician diagnosed Major Depression, and prescribed certain medications. Id. Plaintiff further argues that Dr. Edelmiro Rodríguez also diagnosed Major Depression. However, this Court notes that on the November 3, 2004, Dr. Rodríguez ruled out said condition, and noted that the mental status could not be determined because Plaintiff did not speak or reply to questions. T.R. at 247.

In support of his argument, Plaintiff also refers to a medical statement dated January 17, 2006, signed by an unidentified general practitioner, determining that he suffers from extreme limitations which impede his ability to work. T.R. at 300-311. Furthermore, he points to Dr. Escabí's October 23, 2007 report. However, said report was rendered after the ALJ's decision. Therefore, it was not considered by the ALJ at that time. Since this Court may review an ALJ's decision based solely on the evidence presented at the time of the decision, Dr. Escabí's report cannot be considered by this Court. Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).

**Civil No. 08-1141 (SEC)** 10

After reviewing the record, this Court notes that albeit the ALJ found that Plaintiff suffers from major depressive disorder and trauma to the right arm, the five step analysis requires that the ALJ also determine whether the claimant has an impairment equivalent to those contained in Appendix 1. Upon concluding that Plaintiff did not have one of the listed impairments in Appendix 1, the ALJ held that Plaintiff was not disabled, and in turn denied his petition for disability benefits. Notwithstanding, the ALJ's decision fails to point out the evidence which supports said finding. Specifically, from the decision, this Court cannot discern which medical evaluations and documents were taken into consideration when applying the five-factor test. The ALJ only cites Dr. Cesar Cintrón ("Dr. Cintrón"), and Dr. Edelmiro Rodríguez's ("Dr. Rodríguez") findings. However, he also mentions that "[a]nother pyschiatrist stated that the claimant could not be evaluated because the claimant was uncooperative," but fails to provide his name, or a reference to the record. T.R. at 32.

Moreover, although the ALJ notes that he considered all symptoms, and opinion evidence in accordance with the SSA's regulations, his decision is absent of references to the record to sustain his finding that "the claimant has residual functional capacity for work activities except for heavy lifting and carrying or complex tasks." Specifically, Dr. Rodríguez did not make any specific recommendations on this front since he noted that Plaintiff failed to participate, or speak during the examination. Notwithstanding, Dr. Cintrón stated that Plaintiff was not disabled to "sit, to stand, to walk, to lift and carry loads, to handle objects, to hear, to speak, to travel." T.R. at 200. Thus after reviewing the record, this Court cannot ascertain the basis for said conclusion.

Moreover, this Court may review an ALJ's decision based solely on the evidence presented to the ALJ, therefore, additional evidence brought before the Appeals Council cannot be considered when reviewing the ALJ's decision, *i.e.* the questionnaire completed by a General Practitioner with a signature but no legible name, progress notes from the Ponce School of

**Civil No. 08-1141 (SEC)** 11

Medicine, for the period from May 2005 through October 2007, and the medical certificate dated October 23, 2007 from Dr. Luis A. Escabí. Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).[2]

The Supreme Court has held that "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985). Thus when the reviewing court cannot evaluate the challenged action on the basis of the record before it, it is impeded from conducting "a *de novo* inquiry into the matter being reviewed, and to reach its own conclusions based on such an inquiry." Id. The First Circuit adopts this reasoning, upon finding that "[w]hen an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency." Seavey, 276 F.3d at 12.

In light of the above, this Court finds that the basis for the ALJ's decision is unclear, and further explanation of his decision is warranted in order to appropriately review the decision. This Court notes that, at this stage, no determination is made as to whether the ALJ's decision is supported by "substantial evidence," since that inquiry is appropriate after the ALJ properly explains or clarifies the basis for his decision.

**Conclusion**

Based on the foregoing, the case is **REMANDED** with instructions to the Commissioner for additional explanation or clarification of the ALJ's decision.

**IT IS SO ORDERED.**

---

[2] This Court notes that the Appeals Court provided no further analysis of the evidence before the ALJ, or the additional evidence provided by Plaintiffs on appeal.

**Civil No. 08-1141 (SEC)**  12

In San Juan, Puerto Rico, this 24th day of September, 2009.

                                        *S/Salvador E. Casellas*  
                                        SALVADOR E. CASELLAS  
                                        U.S. Senior District Judge